PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1598 & 15-2673
_____

VINCENT WILKERSON,
                    Appellant in No. 15-2673


v.


SUPERINTENDENT FAYETTE SCI;
ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY PHILADELPHIA,
                    Appellants in No. 15-1598
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:12-cv-02190)
Honorable Paul S. Diamond, District Judge
_____

Argued: March 8, 2017

Before: HARDIMAN and KRAUSE, *Circuit Judges*, and
STENGEL, *Chief District Judge*.[*]


(Filed: September 8, 2017)
_____

Max C. Kaufman       [Argued]
Susan E. Affronti
Ronald Eisenberg
George D. Mosee, Jr.
Anne Palmer
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Counsel for Superintendent Fayette SCI,*
        *Attorney General Pennsylvania,*
        *and District Attorney Philadelphia*


Maria K. Pulzetti       [Argued]
Brett G. Sweitzer
Leigh M. Skipper
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Vincent Wilkerson*

_____

[*] The Honorable Lawrence F. Stengel, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

_____

OPINION OF THE COURT
_____


KRAUSE, *Circuit Judge*.

Following a trial in which the evidence reflected that Appellee/Cross-Appellant Vincent Wilkerson shot his victim in the chest and beat the victim with a gun, a Pennsylvania jury convicted Wilkerson of both attempted murder and aggravated assault. In his instant petition for habeas corpus, Wilkerson contends that these convictions violate the Double Jeopardy Clause because the jury instructions permitted the jury to convict on both offenses based on the shooting alone. Wilkerson also raises a challenge under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the trial judge's imposition of an enhanced sentence for attempted murder based on a finding by the judge, but not the jury, that the victim suffered serious bodily injury and a related claim that his counsel was ineffective for failing to object to this finding at sentencing or to raise the issue on direct appeal. Because Wilkerson has not demonstrated that the state court's rejection of his double jeopardy claim was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C § 2254(d)(1), he cannot meet the high bar necessary to warrant habeas relief, and the District Court erred in granting his petition on that claim. Further, because Wilkerson did not timely raise his *Apprendi* claim or related ineffective assistance claims, he is no more entitled to relief on those grounds.

3

Accordingly, we will affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. Factual Background

All charges against Wilkerson arose from a violent altercation outside of a night club in 1997. As reflected in the trial testimony, after Wilkerson approached a woman outside of the club and began talking to her and pulling on her clothing, a friend of hers, Nasir Hill, who was also leaving the night club, walked up to speak with her, prompting a heated verbal exchange in which Wilkerson accused Hill of being disrespectful for interrupting his conversation. Although the argument ended quickly and the two men separated, Wilkerson returned moments later, knocked Hill unconscious with a punch to the face, and then, after positioning Hill's body on the hood of a parked car, struck him in the head with a gun. With Hill still lying unconscious, Wilkerson stepped back two-to-four feet and shot Hill in the chest before fleeing the scene.

Wilkerson was charged with multiple crimes resulting from this incident including, among other things, attempted murder and aggravated assault. At the conclusion of his trial, the judge instructed the jury as to the various counts. As part of the instructions for the charge of attempted murder, the trial judge told the jury that a conviction would require that it find Wilkerson "did a certain act" and "[i]n this case that act is alleged to be a shooting . . . of [Hill]," App. 586. With respect to the crime of aggravated assault, the trial judge instructed the jury that, in order to convict, it would have to find "that [Wilkerson] caused or attempted to cause serious bodily injury to [Hill]." App. 587. Of relevance to this appeal, the trial judge

4

did not specify that Wilkerson's shooting Hill could not, in addition to serving as the basis for an attempted murder conviction, also serve as the "attempt[] to cause serious bodily injury" for the aggravated assault conviction, and, after deliberations, the jury returned a guilty verdict on both counts on a general verdict form that likewise did not specify whether the "serious bodily injury" finding underlying the aggravated assault conviction related to the shooting or the assault that preceded it.

Wilkerson was sentenced to ten-to-twenty years of incarceration on the aggravated assault conviction and twenty-to-forty years on the attempted murder conviction to be served consecutively.[1] That sentence for attempted murder reflected an enhancement, allowable under Pennsylvania law only where there has been a finding of "serious bodily injury," 18 Pa. Cons. Stat. § 1102(c)—a finding that here was made only by the judge at sentencing and had not been submitted to the jury.

## II.  Procedural History

### A.  Direct Appeal and Collateral Review in Pennsylvania State Court

---

[1]  Wilkerson was originally sentenced to life imprisonment without parole under Pennsylvania's "three strikes" law, 42 Pa. Cons. Stat. § 9714(a)(2)(1982 & Supp. 1997). That sentence was vacated after the Pennsylvania Supreme Court declared § 9714 unconstitutional, and the instant sentence was imposed.

5

Wilkerson appealed to the Pennsylvania Superior Court and argued that his convictions for attempted murder and aggravated assault should have merged for sentencing purposes. In making this argument, Wilkerson relied on *Commonwealth v. Anderson*, 650 A.2d 20 (Pa. 1994), where the Pennsylvania Supreme Court had held that aggravated assault is a lesser included offense[2] of attempted murder, so that if the convictions on both counts are based on the same criminal act, the sentences for the two crimes "merge" as a matter of state law. *Id.* at 24. Thus, Wilkerson asserted, because the bills of information under which he was charged and the jury instructions given at his trial reflected that he was convicted of both attempted murder and aggravated assault on the basis of a single violent episode, his sentences for the two crimes should have merged.

The Superior Court rejected that argument, holding that *Anderson* only applies "in those instances where multiple punishments arise from a single act," and that Wilkerson's convictions stemmed from two separate acts: (1) shooting Hill in the chest (the attempted murder), and (2) striking Hill with a gun (the aggravated assault). App. 717-18. According to the Superior Court, Wilkerson's challenge therefore was "more properly characterized as a challenge to the sufficiency of the evidence underlying the convictions." App. 718. As it concluded there was sufficient evidence to support the finding that Wilkerson was guilty of both criminal acts, the Superior Court affirmed Wilkerson's convictions and sentence.

---

[2] A lesser included offense is one that "does not require proof of any additional element beyond those required by the greater offense." *Government of Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982).

6

Wilkerson then filed a petition pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA), raising a different claim not relevant to this appeal. The PCRA court dismissed Wilkerson's petition, and the Pennsylvania Superior Court affirmed.

## B.     Federal Habeas Proceedings

Having been denied relief in state court, Wilkerson filed a petition for federal habeas relief pursuant to 28 U.S.C § 2254 in the United States District Court for the Eastern District of Pennsylvania. In that petition, Wilkerson claimed, among other things, that his convictions for both attempted murder and aggravated assault on the basis of the same conduct violated the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment. A little over a year after filing his original petition, Wilkerson filed an "Amended Petition in Support of Memorandum of Law," in which he asserted for the first time that the application of the enhancement to his attempted murder sentence, reflecting the trial judge's finding of serious bodily injury, violated *Apprendi* because "the element of serious bodily injury was not made part of the jury instruction with respect to the charge of attempted murder." Supp. App. 38.

Wilkerson's habeas petition was referred to a Magistrate Judge who recommended that the District Court grant relief with respect to Wilkerson's double jeopardy claim and deny his petition with respect to all other claims. When addressing Wilkerson's *Apprendi* challenge, the Magistrate Judge agreed with Wilkerson that an error occurred when he was sentenced above the twenty-year statutory maximum without the requisite factual finding by the jury but held that

7

this error was harmless and did not warrant habeas relief because it was "inconceivable that a properly-instructed jury would *not* find that Wilkerson created a substantial risk of Hill's death." App. 77. While the Commonwealth filed an objection to the Magistrate Judge's double jeopardy recommendation, Wilkerson did not object on any ground.

The District Court adopted the Magistrate Judge's recommendations in full. With respect to Wilkerson's double jeopardy claim, the District Court held that the state court's decision to apply a sufficiency of the evidence analysis to Wilkerson's merger claim on direct appeal was an unreasonable application of clearly established federal law. Reasoning that the proper question for courts to consider when faced with a challenge to a trial court's jury instructions is "whether there is reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution," App. 12 (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)), the District Court determined the instructions here were framed in a way that allowed the jury to conclude that the shooting could form the basis of both the attempted murder and aggravated assault convictions. Thus, the District Court held "there is a 'reasonable likelihood' that the jury applied the trial court's attempted murder and aggravated assault instructions in an impermissible manner, and thus convicted [Wilkerson] of two crimes for a single act" in violation of the Double Jeopardy Clause. App. 14.

As for Wilkerson's *Apprendi* claim, the District Court observed that "neither party ha[d] objected" to the Magistrate Judge's analysis beyond the double jeopardy claim, including the Magistrate Judge's rejection of the sentencing challenge, and it proceeded to adopt the Report and Recommendation in full—granting Wilkerson relief on his double jeopardy claim

8

and denying relief on his *Apprendi* claim. This appeal and cross-appeal followed.

### III.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 2253. Where, as here, the District Court based its rulings on the evidence contained in the state court record and did not conduct an evidentiary hearing or engage in any independent fact-finding, our review of the District Court's decision is plenary. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

Our review of the state court's judgment is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes significant procedural and substantive limitations on the scope of our review. Two such limitations have particular bearing on this appeal. First, a petitioner must "ha[ve] exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), before seeking federal habeas relief, and a claim will be deemed unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented," but has failed to do so, *id.* § 2254(c). This exhaustion requirement does not require a habeas petitioner to cite the federal Constitution "book and verse," but rather to have "fairly presented" his federal claim to the state courts. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 277-78 (1971)). That is, the petitioner must have "present[ed] a federal claim's factual and legal substance to the state courts in a manner that put[] [the state courts] on notice that a federal claim [was] being asserted." *Id.* If a petitioner's

9

federal claim was not "fairly presented," and further state-court review is no longer available under state law, the claim is "procedurally defaulted . . . and . . . may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default." *Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001).

Second, where a state court has rejected a petitioner's claim on the merits, AEDPA limits the scope of our substantive review to whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Pazden v. Maurer*, 424 F.3d 303, 311 (3d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). A decision involves an "unreasonable application" of federal law if "no 'fairminded jurist' could agree with the state court's decision." *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848 (3d Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)) (alteration omitted). If this threshold seems "difficult to meet," the Supreme Court has advised that is because "it was meant to be." *Harrington*, 562 U.S. at 102. Thus, we may not grant relief "simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices," *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000), but only if the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement," *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015).

## IV.  Analysis

With these standards in mind, we will first address the Commonwealth's appeal of the District Court's grant of habeas relief on Wilkerson's double jeopardy claim, and then turn to Wilkerson's cross-appeal of the District Court's denial of habeas relief on his *Apprendi* claim.

### A.  Wilkerson's Double Jeopardy Claim

The Commonwealth contends that the District Court made two errors in granting Wilkerson habeas relief on his double jeopardy claim: first, it should not have reached the merits because that claim was not raised as a double jeopardy claim in the state court and thus was unexhausted and procedurally defaulted; and, second, it did not apply proper AEDPA deference in its review on the merits. We address these arguments in turn.

#### 1.  Procedural Default

A petitioner seeking § 2254 relief from a Pennsylvania conviction exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a petition for collateral relief under the PCRA.[3] *Robinson v. Beard*, 762 F.3d

---

[3] Although Wilkerson did not seek discretionary review from the Pennsylvania Supreme Court, we have held that a petitioner need not seek such relief for his claims to be eligible

316, 328 (3d Cir. 2014). Here, it is undisputed that Wilkerson did not explicitly state that he was raising a federal constitutional claim under the Double Jeopardy Clause in either of those fora. It is also undisputed, however, that he did seek relief under Pennsylvania's merger doctrine on direct appeal, and the parties' disagreement centers on whether that state law merger claim, in the terms he argued it, was sufficient to "fairly present" his federal double jeopardy claim to the state court.[4]

---

for federal habeas review. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

[4] The Commonwealth also asserts that, even if Wilkerson's arguments on his merger claim were sufficient to present his double jeopardy claim to the state appellate court, his claim still was not properly exhausted because he did not first raise them in the trial court. This argument misapprehends the purpose of the exhaustion and procedural default rules, which are intended to ensure that habeas petitioners "meet the State's procedural requirements for presenting [their] federal claims" and do not "deprive[] the state courts of an opportunity to address those claims in the first instance," *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)—not to impose additional procedural burdens that go beyond those required by the state courts themselves. Here, because the state appellate court addressed Wilkerson's merger claim on the merits, irrespective of his failure to raise it in the trial court, our focus for federal habeas purposes is on the decision of the appellate court. *Robinson*, 762 F.3d at 328 (federal claims exhausted so long as they were properly presented "on direct appeal or in a petition under the PCRA"). Thus, if we agree with Wilkerson

12

We have held that a state prisoner may "fairly present" a federal claim to state courts without specifically referencing the federal Constitution or a federal statute in four ways: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless*, 172 F.3d at 261-62 (quoting *Evans v. Court of Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1232 (3d Cir. 1992)).[5]

In view of the close relationship between Pennsylvania's merger doctrine and federal double jeopardy jurisprudence, and Wilkerson's citation to *Anderson*, which itself relies on Supreme Court jurisprudence, we conclude that Wilkerson has "assert[ed] [his] claim[s] in terms so particular

that his merger claim put the Superior Court "on notice" that he was making a federal double jeopardy argument and that the court rejected that argument, his double jeopardy claim was properly exhausted. *McCandless*, 172 F.3d at 261.

[5] To the extent the Commonwealth implies that the Supreme Court's decision in *Baldwin v. Reese*, 541 U.S. 27, 31 (2004), may have imposed a higher standard for "fair presentation" than the standard we articulated in *McCandless*, our Court has already rejected that very argument. *Nara v. Frank*, 488 F.3d 187, 198 n.17. (3d Cir. 2007).

13

as to call to mind a specific right protected by the Constitution," and thus did fairly present his claim to the Pennsylvania Superior Court. *Id.* The Double Jeopardy Clause of the Fifth Amendment prescribes that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and it "protects not only against a second trial for the same offense, but also against multiple punishments for the same offense," *Whalen v. United States*, 445 U.S. 684, 688 (1980) (internal quotation marks omitted). To assess whether two crimes constitute the "same offense" for double jeopardy purposes, we employ the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). That is, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. If this test yields "only one" offense, "cumulative sentences are not permitted, unless elsewhere specially authorized by Congress." *Whalen*, 445 U.S. at 693.

In *Anderson*, the Pennsylvania Supreme Court imported this federal double jeopardy test into its merger doctrine under state law. In that case, the petitioner had been convicted of aggravated assault and attempted murder on the basis of a single shooting and argued that his sentences should have "merged." 650 A.2d at 20-21. When analyzing the petitioner's claim, the Pennsylvania Supreme Court held that the analysis necessary to resolve the defendant's merger claim was "identical to the inquiry as to whether the double jeopardy protection of the Fifth Amendment has been violated." *Id.* at 23. The Pennsylvania Supreme Court explained that, when a defendant is charged with two crimes on the basis of the same

14

criminal act, "there is no difference between a double jeopardy analysis and a merger analysis" because "the operative consideration in both is whether the elements of the offenses are the same or different." *Id.* And it proceeded to apply the *Blockburger* test to evaluate whether aggravated assault and attempted murder would constitute the "same offense" for merger purposes, concluding petitioner's sentence for his aggravated assault conviction must be vacated because "aggravated assault is necessarily included within the offense of attempted murder," *id.* at 24.

Here, Wilkerson argued on direct appeal that his sentences for attempted murder and aggravated assault should have been merged because both convictions arose from the same criminal act and, per *Anderson*, aggravated assault is a lesser included offense of attempted murder. Wilkerson directed the Superior Court to the jury instruction given at his trial for attempted murder, asserting that by convicting him on that charge, the jury "[n]ecessarily . . . also found that he intended to inflict serious bodily harm upon the victim," and that to convict him on the aggravated assault charge, the jury was also only required to find that Wilkerson "caused or attempted to cause serious bodily injury to . . . the victim." App. 730. To reinforce his argument that he was convicted and sentenced twice for the same criminal act, Wilkerson also cited to the bills of information under which he was charged and pointed out that they did not distinguish which facts formed the basis of his attempted murder charge and which formed the basis of his aggravated assault charge. Thus, Wilkerson urged, because both convictions stemmed from the same criminal conduct and, under *Anderson*, aggravated assault is a lesser included offense of attempted murder, "the failure of the [trial]

15

court to merge the sentence[] on aggravated assault with the sentence on attempted murder was error." App. 733.

Considering that the Pennsylvania state law doctrine invoked by Wilkerson is based on Supreme Court case law and involves an analysis that the Pennsylvania Supreme Court has described as "identical" to that governing a federal double jeopardy claim,[6] *Anderson*, 650 A.2d at 23, we are persuaded that the Superior Court had fair notice of that claim and rejected it on the merits.[7] *McCandless*, 172 F.3d at 261.

---

[6] The Commonwealth contends that the Pennsylvania Supreme Court misconstrued federal law in *Anderson*, as the test it announced for analyzing a state law merger claim is not "identical" to a federal double jeopardy analysis. This argument misses the mark, as what is relevant for purposes of our analysis of fair notice is that *Anderson* explicitly adopted the *Blockburger* test.

[7] The Commonwealth also urges that Wilkerson's merger claim could not have alerted the state court that he was asserting a federal double jeopardy claim because merger and double jeopardy claims are subject to different waiver rules and, when successful, provide different remedies. Accepting these distinctions as accurate, they are irrelevant to whether Wilkerson fairly presented his double jeopardy claim in state court. Waiver is not an issue in this case and, although merger is a challenge to a defendant's sentence, *Anderson*, 650 A.2d at 21, while double jeopardy is a challenge to the underlying conviction, *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996), the remedy that would follow from the finding of a violation is likewise immaterial to whether the nature of the

16

Having satisfied any threshold concerns as to whether AEDPA allows us to address Wilkerson's double jeopardy claim, we now turn to the merits of that claim to assess whether the state court's analysis was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1).

2.      The Merits

Before we address the central issue of the parties' dispute, we take note of two points on which they agree. First, as set forth in *Anderson*, aggravated assault is a lesser-included offense of attempted murder under Pennsylvania law. That is—if one criminal act served as the basis for both of Wilkerson's convictions, he has been punished twice for the "same offense" in violation of the Double Jeopardy Clause. *See Whalen*, 445 U.S. at 692; *Anderson*, 650 A.2d at 24. Second, as even Wilkerson seems to acknowledge, based on the evidence at trial, a properly instructed jury could have convicted Wilkerson of attempted murder and aggravated assault on the basis of two distinct criminal acts. In other words, Wilkerson does not contest that the Commonwealth adduced sufficient evidence for a reasonable jury to find that he both shot Hill, supporting the attempted murder conviction, and beat Hill, supporting the aggravated assault conviction.

Where the parties part ways, however, is on the appropriate test to assess whether Wilkerson was legally convicted of both offenses based on separate criminal acts, or

violation claimed put the state court "on notice that a federal claim [was] being asserted," *McCandless*, 172 F.3d at 261.

17

if he was illegally convicted twice on the basis of the shooting alone. According to the Commonwealth, the proper test is whether a reasonable jury could have convicted Wilkerson on both counts, so that a reviewing court need look no further than the trial evidence to determine, as the Superior Court did, whether it was sufficient to support both convictions. Wilkerson, on the other hand, urges that the relevant inquiry is not whether a reasonable jury could have premised the convictions on two different acts given the evidence at trial, but whether the jury in his case actually did so—a question that requires a reviewing court (1) to look not merely to the sufficiency of the evidence, but also to the indictment and jury instructions,[8] and (2) to construe any ambiguity as to the basis of the jury's conviction in the defendant's favor. That is, according to Wilkerson, if it is possible the jury convicted him twice based on the shooting alone, his multiple convictions cannot stand.

On direct appeal, the state court applied the analysis now advocated by the Commonwealth, treating Wilkerson's claim as one of "sufficiency of the evidence," and holding that because the evidence at trial could have supported separate convictions for aggravated assault and attempted murder, there was no merger or double jeopardy violation. App. 718-20. Our

---

[8] In his briefing, Wilkerson appeared to take the position that, when assessing the basis for a jury's verdict, a reviewing court may not consider the evidence presented at trial at all, and must confine its inquiry to only the indictment, jury instructions, jury interrogatories, and verdict sheet. Wilkerson reversed course at oral argument, however, and conceded that a review of the entire trial record is appropriate when evaluating the grounds on which a jury reached its verdict.

18

task on federal habeas review is not to decide whether we agree with this treatment of Wilkerson's claim or with the result the state court reached, but to analyze whether the state court's ruling "was so lacking in justification" that, based on existing Supreme Court case law, it was unreasonable "beyond any possibility for fairminded disagreement." *Davis*, 135 S. Ct. at 2199 (citation omitted). Upon review of the Supreme Court's double jeopardy jurisprudence and our Court's precedents in this context, we conclude that Wilkerson cannot satisfy this high threshold.[9]

---

[9] Wilkerson argues that AEDPA's deferential standard does not apply to his double jeopardy claim because, by re-characterizing his merger claim as a sufficiency of the evidence challenge, the state court did not address the merits of that claim. This argument is meritless. When addressing Wilkerson's merger claim, the state court explained that merger only applies "in those instances where multiple punishments arise from a single act" and, because Wilkerson's attempted murder and aggravated assault convictions "stemmed from his alleged commission of two separate criminal acts," relief was not warranted. App. 717-18. By concluding that Wilkerson's multiple convictions each derived from a distinct criminal act, the state court unambiguously addressed and rejected Wilkerson's merger/double jeopardy claim on the merits. In any event, Wilkerson explicitly argued that AEDPA dictated the appropriate standard of review in his petition for habeas relief before the District Court, and any argument to the contrary is therefore waived, *see Bailey v. United Airlines*, 279 F.3d 194, 202 (3d Cir. 2002).

The Supreme Court has never spoken directly to the appropriate test to determine whether multiple convictions resulting from the same trial were based on one criminal act or two. However, it has interpreted the Double Jeopardy Clause in an analogous context—cases in which a defendant previously has been acquitted of one charge and the Government seeks to prosecute the same defendant on another charge, arguably based on the same criminal act. And in those "issue preclusion"[10] cases, the Supreme Court assessed what facts formed the basis of a jury's verdict on the one charge in order to determine whether a double jeopardy violation would occur if a trial were to move forward on the other, in effect employing the very test applied by the Superior Court here.

In *Ashe v. Swenson*, for instance, the Supreme Court explained that, in the double jeopardy issue preclusion context, a reviewing court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury *could have* grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. 436, 444 (1970) (emphasis added) (internal quotation marks omitted). *Ashe* makes clear that the correct approach in the issue preclusion context is to review the entire trial record in an attempt to discern the basis of the jury's conviction but that, where no clear answer emerges, the tie

---

[10] Although the parties use the term "collateral estoppel" to describe the question at issue in those circumstances, the Supreme Court has recently advised that "'issue preclusion' is the more descriptive term." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 n.1 (2016).

20

goes to the Government: so long as a reasonable jury "could have" based its decision on facts that would not create a double jeopardy violation, the subsequent prosecution may move forward. *Id.*; *see also Bravo-Fernandez v. United States*, 137 S. Ct. 352, 365-66 (2016) (inconsistent verdict at first trial did not prevent retrial on vacated conviction because it was a "mystery what the jury necessarily decided" and, therefore, the defendants could not "establish the factual predicate necessary to preclude the Government from retrying them . . . namely, that the jury in the first proceeding actually decided that they did not violate the [statute in question]"); *United States v. Rigas*, 605 F.3d 194, 219 (3d Cir. 2010) (en banc) (denying issue preclusion double jeopardy claim because it was "impossible to determine with any certainty" whether the issue in question was "definitively decided" at previous trial).

Moreover, although the Supreme Court has addressed this issue only in the issue preclusion context, we have addressed it in the context of multiple convictions resulting from a single trial—applying the exact same test. For example, in *United States v. Finley*, the defendant argued that a double jeopardy violation occurred when he was convicted of both "receiving" and "distributing" child pornography, each a distinct violation of 18 U.S.C. § 2252(a)(2). 726 F.3d 483, 495 (3d Cir. 2013). When analyzing whether the defendant had been convicted of multiple criminal acts or wrongly punished multiple times for one act, we assessed the evidence presented at trial and concluded that because the evidence supported separate convictions for separate criminal acts, no double jeopardy violation had occurred. *Id.* at 496. Likewise, in *United States v. Chorin*, the defendant argued that his convictions for both the attempt to manufacture more than one kilogram of methamphetamine, and for the possession of

21

monomethylamine knowing, or having reasonable cause to believe, that it would be used to manufacture methamphetamine, violated the Double Jeopardy Clause. 322 F.3d 274, 276-77 (3d Cir. 2003). Citing primarily to the trial testimony, we concluded that the defendant "possessed different methylamine liquid at different places for different purposes on different occasions," and thus his convictions were not "based on the same predicate act

or transaction," and no double jeopardy violation had occurred. *Id.* at 282.

Against the backdrop of *Ashe* and these other double jeopardy cases, the Superior Court's analysis can hardly be deemed "an unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). On the contrary, that court reviewed the trial record and determined that there was sufficient evidence for the jury to convict Wilkerson of attempted murder based on the shooting and to convict him of aggravated assault based on the beating—concluding, in substance, that the jury "could have" reached its verdicts on grounds that posed no double jeopardy concern. *Ashe*, 397 U.S. at 444. Thus, although "sufficiency of the evidence" may have been an inartful descriptor,[11] App. 718, the approach the

―――――――――――

[11] In the double jeopardy context, of course, the inquiry cannot be strictly limited to sufficiency, as there may be situations where the trial evidence would allow a jury to convict on grounds that would not violate the Double Jeopardy Clause, but, once the jury instructions or indictment are considered, it becomes apparent the jury did, in fact, base its verdict on unconstitutional grounds. *E.g.*, if the trial judge in this case had instructed: "If you find that Mr. Wilkerson shot Mr. Hill, you must return a verdict of guilty as to both

22

Superior Court took and the conclusion that it reached appear entirely consistent with *Ashe* and its progeny.[12]

At the very least, absent Supreme Court precedent dictating that a different analysis is required when a defendant's double jeopardy claim arises in this "multiple punishment" context rather than in the context of issue

attempted murder and aggravated assault." In such situations, while there may be "sufficient evidence" for the jury to convict on constitutional grounds, an examination of the record as a whole may preclude a determination that a rational jury "could have" convicted on those grounds as it would have been explicitly instructed to do otherwise. *Ashe*, 397 U.S. at 444. Here, however, where the jury instructions were merely ambiguous and did not foreclose the jury from rendering multiple constitutionally sound convictions, the state court was not unreasonable in sustaining those convictions based on the sufficiency of the trial evidence.

[12] Although Wilkerson points us to two Supreme Court cases in the issue preclusion context that reach the opposite outcome, both cases are simply applications of *Ashe* in which the trial record precluded the possibility that the jury "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," *Ashe*, 397 U.S. at 444. *See, e.g.*, *Turner v. Arkansas*, 407 U.S. 366, 369 (1972) (per curiam) (applying *Ashe* and ruling in defendant's favor on issue preclusion double jeopardy claim because "[t]he only logical conclusion" from the trial record was that the defendant had already been acquitted of the act for which the Government sought to retry him).

preclusion, the Superior Court's analysis cannot be deemed "contrary to" any "clearly established Federal law," 28 U.S.C. § 2254(d)(1), or so unreasonable as to put it "beyond any possibility for fairminded disagreement," *Davis*, 135 S. Ct. at 2199; *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court [on the specific issue in question], it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." (second and third alterations in original) (internal quotation marks omitted)).

Wilkerson counters that there is such precedent to be found in the Supreme Court's due process jurisprudence. Specifically, Wilkerson cites to the Supreme Court's decision in *Griffin v. United States*, where the Court explained that "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." 502 U.S. 46, 53 (1991). Because the jury instructions and verdict sheet here leave open the possibility that Wilkerson's attempted murder and aggravated assault convictions likewise may have rested on the impermissible basis of a single criminal act, the shooting, Wilkerson argues that one of those convictions must be vacated. This argument dovetails with the reasoning of the District Court which, relying on due process case law, granted Wilkerson habeas relief because it concluded that there was a "'reasonable likelihood' that the jury applied the trial court's attempted murder and aggravated assault instructions in an impermissible manner." App. 14 (quoting *Estelle*, 502 U.S. at 72).

We acknowledge the tension between the Supreme Court's double jeopardy jurisprudence—which gives the benefit of the doubt to the Government and allows for a second

24

criminal prosecution to move forward so long as the jury in the prior proceeding "*could have* grounded its verdict" on facts that would not create a double jeopardy violation, *Ashe*, 397 U.S. at 444 (emphasis added)—and its due process jurisprudence—which gives that same benefit to the defendant and requires reversal so long as the conviction "may have rested" on an unconstitutional basis, *Griffin*, 502 U.S. at 53, or there is a "reasonable likelihood" that the jury applied an ambiguous instruction "in a way that violates the Constitution," *Estelle*, 502 U.S. at 72 (internal quotation marks omitted); this case, however, arising in the context of deferential habeas review is not the forum for our Court to resolve that tension. While we commend the District Court's thoughtful analysis and recognize that we may need to address this issue at a later date if it comes before us on direct appeal, it is sufficient under AEDPA that the jury could have convicted Wilkerson on separate counts of attempted murder and aggravated assault, *Ashe*, 397 U.S. at 444, and thus, no *double jeopardy* violation occurred in this case.

Accordingly, we will reverse the District Court's order granting Wilkerson relief on that claim, and turn to Wilkerson's cross-appeal challenging the sentence imposed for his attempted murder conviction.

### B.    Wilkerson's *Apprendi* Claim

The claim at issue in Wilkerson's cross-appeal rests on the trial judge's failure to ask the jury to decide whether "serious bodily injury result[ed]," 18 Pa. Cons. Stat. § 1102(c), from Wilkerson's attempted murder before she imposed a sentence enhancement on that charge. *See Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Commonwealth v. Johnson*, 910 A.2d 60, 67 (Pa. Super. Ct. 2006) (holding that, under *Apprendi*, "it was not the prerogative of the trial court, but solely the responsibility of the jury . . . to find, beyond a reasonable doubt, whether a serious bodily injury resulted from [an] attempted murder"). Wilkerson asserts that he is entitled to habeas relief because his attempted murder sentence contravened *Apprendi* and also because his counsel's failure to either object at sentencing or to raise the issue on appeal constituted ineffective assistance of counsel.

The Commonwealth does not contest the error but urges that Wilkerson is not entitled to habeas relief because: (1) we lack jurisdiction to hear Wilkerson's cross-appeal because he did not timely file a notice of appeal under Rule 4(a)(3) of the Federal Rules of Appellate Procedure; (2) Wilkerson's claim is time barred under AEDPA's one-year statute of limitations; (3) the claim is procedurally defaulted; and (4) even if we have jurisdiction and can reach the merits of Wilkerson's claim, it fails on the merits under the appropriate standard of review.

Although we conclude we have jurisdiction over the claim, we agree with the Commonwealth that Wilkerson's cross-appeal is time barred under AEDPA's statute of limitations, and thus have no need to reach his remaining arguments.[13]

---

[13] Because we conclude that Wilkerson's failure to timely raise his *Apprendi* and ineffective-assistance-of-counsel claims bars him from habeas relief, we will neither address whether these claims were also procedurally defaulted nor, as Wilkerson asserts, qualify for the narrow exception to

26

1. Federal Rule of Appellate Procedure 4(a)(3)

We turn first to the Commonwealth's assertion that we lack jurisdiction over Wilkerson's cross-appeal because Wilkerson failed to comply with Federal Rule of Appellate Procedure 4(a)(3). Under this rule, "[i]f one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed." Fed. R. App. P. 4(a)(3). Wilkerson did not file his cross-appeal within that allotted time frame, and the Commonwealth maintains that this failure divests us of our jurisdiction to even consider his cross-appeal.

Our Court has recently addressed this very issue, however, and reached the opposite conclusion. As we explained in *Mathias v. Superintendent Frackville*, No. 15-2694, 2017 WL 3687781, *10-14 (3d Cir. Aug. 28, 2017), Rule 4(a)(3) is not a jurisdictional constraint, but a "claim-processing" rule that we may excuse in the interests of justice. *Id.* at *13. And as a claim-processing rule, it remains subject to forfeiture and waiver, *see Bowles v. Russell*, 551 U.S. 205, 214 (2007); *Baker v. United States*, 670 F.3d 448, 455 (3d Cir. 2012); *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 197 (3d Cir. 2008)—doctrines that dispose of the Commonwealth's objection here in view of its failure to move to dismiss Wilkerson's untimely cross-appeal despite multiple

AEDPA's procedural default rule announced by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012).

27

opportunities to do so over the course of six months prior to the instant merits briefing.[14]

Given its persistent refusal to oppose Wilkerson's cross-appeal on Rule 4(a)(3) grounds despite numerous invitations to do so, the Commonwealth forfeited that challenge to Wilkerson's cross-appeal, *Baker*, 670 F.3d at 455, and we move on to address whether Wilkerson's *Apprendi* and related ineffective-assistance-of-counsel claims were timely raised.

## 2. Timeliness

---

[14] When Wilkerson filed his notice of appeal on July 9, 2015, our Court's Clerk's Office noted the possible jurisdictional concern and gave both parties the opportunity to address Rule 4(a)(3)'s application in this case. Wilkerson responded to the Clerk's Office's letter and requested a certificate of appealability on the *Apprendi* issue now set forth in his cross-appeal. The Commonwealth, however, failed to respond to the Clerk's Office's letter or to Wilkerson's motion. The Commonwealth was then given yet another opportunity to take a position on Wilkerson's late notice of cross-appeal, as a motion's panel of our Court sent Wilkerson's request for a certificate of appealibility back to the District Court. The Commonwealth, however, again failed to oppose Wilkerson's motion. As a result, the District Court granted Wilkerson a certificate of appealability in January 2016, and the case then returned to us for merits briefing. Only in its merits brief did the Commonwealth assert for the very first time that Wilkerson's claim must be dismissed for failure to comply with Rule 4(a)(3).

28

In addition to the requirements described above, AEDPA imposes a one-year statute of limitations on state inmates seeking to file habeas claims in federal court. 28 U.S.C. § 2244(d)(1). If an inmate complies with this deadline, the Federal Rules of Civil Procedure allow him, like other any civil litigant, to later amend his petition to add additional claims so long as those additional claims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed R. Civ. P. 15(c)(1)(B). Here, it is not contested that Wilkerson filed a timely habeas petition raising his double jeopardy claim but did not file the "Amended Petition in Support of Memorandum of Law" that added his *Apprendi* claim until well after the one-year mark.[15] Supp. App. 36. The timeliness of Wilkerson's *Apprendi*-related claims therefore depends on whether they "relate back" to the double jeopardy claim in his original habeas petition.

We conclude that they do not. In *Mayle v. Felix*, the Supreme Court addressed how this relation back rule applies in the context of a habeas petition. 545 U.S. 644 (2005). The petitioner in *Mayle* had filed a petition asserting that his Sixth Amendment right to confront adverse witnesses had been

---

[15] It appears that, even in his amended petition, Wilkerson did not raise his ineffective-assistance-of-counsel claims that he has now derived from his *Apprendi* claim, and that claim is therefore waived, *Bailey*, 279 F.3d at 202. Nonetheless, even assuming the ineffective-assistance-of-counsel claims were somehow implicit in the underlying *Apprendi* claim, they were not timely raised for the reasons explained below.

29

violated when the trial judge admitted certain out-of-court statements made by a jailhouse informant. *Id.* at 650-51. The petitioner then sought to amend his petition to add another claim—this time that his Fifth Amendment right against self-incrimination had been violated when the trial judge allowed the prosecutor to introduce statements the petitioner had made during a pretrial police interrogation. *Id.* at 651-52. The Supreme Court rejected this amendment as time barred, explaining that while both claims related to the admission of pre-trial statements, those statements "were separated [from each other] in time and type," *id.* at 657, and the petitioner had thus defined "ar[ising] out of the conduct, transaction, or occurrence" for relation back purposes at "too high a level of generality," *id.* at 661 (internal quotation marks omitted). The Court elaborated that two claims merely arising from the same "conviction or sentence" cannot be enough to satisfy the relation back standard and that, in order to properly relate to one another, the claims in the amendment and the claims in the original petition must be "tied to a common core of operative facts." *Id.* at 657, 664.

Wilkerson urges that his claims meet this standard because both his double jeopardy claim and his *Apprendi* claim "arise from . . . the jury instructions, the jury verdict and the sentence imposed," Second Step Br. 49, and "both hinge upon [a] serious bodily injury finding," Fourth Step Br. 15. This explanation falls short. Like the petitioner in *Mayle*, Wilkerson defines the "same conduct, transaction, or occurrence" necessary for relation back at "too high a level of generality." *Mayle*, 545 U.S. at 661 (internal quotation marks omitted). To say that the claims relate to the same "jury verdict and sentence imposed" is just another way of couching the argument explicitly rejected in *Mayle*—that relation back can be satisfied

30

simply because the amendment and petition pertain to the same "conviction or sentence." *Id.* at 657. Although both claims in this case also coincidentally relate to the jury charge and involve the term "serious bodily injury," these common features are not enough to make the claims arise from the same "operative facts" when the problems asserted with the jury charge are entirely unrelated, *id.* at 664.

The operative fact underlying Wilkerson's double jeopardy claim is that, for the aggravated assault charge, the jury instruction stated that Wilkerson could be found guilty for "caus[ing] or attempt[ing] to cause serious bodily injury," App. 587, without specifying that, if he was also convicted of attempted murder, his shooting of Nasir Hill could not be the act that satisfied that requirement. The operative facts for Wilkerson's *Apprendi*-related claims, on the other hand, are that for the attempted murder charge, the jury was never asked to determine whether Wilkerson inflicted serious bodily injury at all, and his counsel did not object on this ground at sentencing or raise the issue on direct appeal. These claims are not the same in "time and type," *Mayle*, 545 U.S. at 657, but are distinct claims with their own factual predicates that happen to involve the presence or absence of the phrase "serious bodily injury" in the jury instructions.[16] For these

_____

[16] Perhaps recognizing the attenuated relationship between his original petition and its subsequent amendment, Wilkerson contends that his relation back claim should be accorded liberal treatment because he filed his original habeas petition and amendment pro se. While pro se litigants are, as a general matter, given more lenient treatment when assessing their compliance with pleading requirements, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), the

31

reasons, Wilkerson's untimely *Apprendi* claim and related ineffective-assistance-of-counsel claims do not relate back to his original petition for habeas corpus, and these claims are therefore barred by AEDPA's one-year statute of limitations.[17]

petitioner in *Mayle* itself was pro se, *Mayle*, 545 U.S. at 648, eliminating any possibility that the Supreme Court's explanation of the relation back requirements in the habeas context would not apply with equal force to a pro se petitioner.

[17] Even if we could reach the merits of Wilkerson's *Apprendi* claim, it would fail under the applicable standard of review. Because Wilkerson did not object to the Magistrate Judge's Report and Recommendation denying this claim, we review that denial for plain error. *Nara*, 488 F.3d at 196. When reviewing for plain error, we reverse only if the error is "(1) clear or obvious, (2) affect[ed] substantial rights, and (3) seriously affected the fairness, integrity or public reputation of judicial proceedings." *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007) (alteration in original) (internal quotation marks omitted). Only the first prong of this three-part test is satisfied in Wilkerson's case. At Wilkerson's trial, the parties stipulated to the introduction of medical records that reflected Nasir Hill was taken to the hospital to receive emergency surgery for a gunshot wound in his chest. In view of that record, Wilkerson does not challenge the seriousness of Hill's injuries resulting from the shooting, and we agree with the Magistrate Judge that, had the jury been asked, it is "inconceivable" that it would not have made the requisite finding of "serious bodily injury" for Wilkerson to receive an enhanced sentence. App. 77. Thus, because it is a near certainty that Wilkerson would have received the identical sentence had the jury been given the proper instruction, Wilkerson cannot demonstrate that this

## V. Conclusion

For the foregoing reasons, we will reverse the District Court's order granting a writ of habeas corpus on Wilkerson's double jeopardy claim, affirm the District Court's order denying relief on all other claims, and remand the case for proceedings consistent with this opinion.

---

*Apprendi* error, or any ineffective-assistance-of-counsel claim derived from it, "affect[ed] his substantial rights" or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Leyva,* 504 F.3d at 363 (alteration in original). *See United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (holding *Apprendi* error cannot meet the plain error requirement of "seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings" when the fact that increased the defendant's sentence without having been submitted to the jury was supported by "overwhelming" evidence that was "essentially uncontroverted"); *United States v. Vazquez*, 271 F.3d 93, 101 (3d Cir. 2001) (en banc) (holding substantial rights are not affected by an *Apprendi* violation where "the court determines that the evidence was sufficiently conclusive to support the sentence actually imposed").