**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2482
_____

UNITED STATES OF AMERICA

v.

EMANOUEL FRANGOS, a/k/a Manny Frangos;
LIBERTY MAINTENANCE, INC.,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2:18-cr-00130-WB-2 and 2:18-cr-00130-WB-4)
District Judge:  Honorable Wendy Beetlestone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 14, 2020
_____

Before:  CHAGARES, SCIRICA, and ROTH, Circuit Judges.

(Filed: July 20, 2020)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Emanouel Frangos and his company, Liberty Maintenance, Inc., were prosecuted for conspiracy to commit wire fraud, wire fraud, and false statements. The jury acquitted Frangos and Liberty on the substantive wire fraud charges but was unable to reach a verdict on the remaining counts. After the Government sought to retry Frangos and Liberty on the conspiracy and false statement counts, Frangos and Liberty moved to dismiss those charges as precluded under the Double Jeopardy Clause of the United States Constitution. The District Court denied that motion to dismiss, and we will affirm.

I.

We write for the parties and so recount only the facts necessary to our decision. The United States Department of Transportation ("USDOT"), pursuant to statute, requires that at least ten percent of its funds for public construction contracts be expended with businesses "owned and controlled by socially and economically disadvantaged individuals." Appendix ("App.") 73. State agencies that receive construction project grant funds from USDOT, such as the Pennsylvania Department of Transportation ("PennDOT"), administer this "Disadvantaged Business Enterprise . . . program in accordance with federal guidelines" and have "the authority to certify that [an] applying company meets the requirements . . . of the program." App. 72–73.

On April 3, 2018, a federal grand jury indicted Frangos, Liberty, and two other defendants on one count of conspiracy to commit wire fraud, five counts of wire fraud, and ten counts of false statements. The indictment charged that Frangos and Liberty had,

2

among other things, defrauded and conspired to defraud USDOT and PennDOT by using a certified disadvantaged business enterprise as a front to secure federally-funded construction projects under false pretenses. For example, on one of the contracts in question, the indictment alleged that the certified disadvantaged business enterprise "did not act as a regular dealer, and did not perform any commercial useful function, but acted as a mere pass-through or front, to give the appearance that [disadvantaged business enterprise] requirements had been met." App. 81.

The jury acquitted Frangos and Liberty on all five counts of wire fraud but could not reach a verdict for Frangos and Liberty on the conspiracy to commit wire fraud count or on the ten false statement counts, leading the District Court to declare a mistrial on the conspiracy and false statement counts. Frangos and Liberty moved to dismiss those remaining counts as barred by the Double Jeopardy Clause of the United States Constitution. The District Court denied that motion, and this timely appeal followed.

## II.[1]

Frangos and Liberty raise two grounds for appeal. First, they contend that the District Court erred in refusing to dismiss the remaining conspiracy charge and false statement charges under the Double Jeopardy Clause's issue preclusion principles. Second, they assert that because the conspiracy charge must be dismissed on issue preclusion grounds, the false statement charges also must be dismissed under the

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

Government's theory of liability under Pinkerton v. United States, 328 U.S. 640 (1946). Because we disagree with the first argument, we need not and do not reach the second.

A.

Frangos' and Liberty's principal argument on appeal is that when the jury acquitted them on the substantive wire fraud counts, the jury must have done so based on having concluded that Frangos and Liberty lacked specific intent to defraud the government agencies. But as we explain, we agree with the District Court that the jury may well have acquitted Frangos and Liberty on another ground.[2]

The "Double Jeopardy Clause . . . embodies principles of [issue preclusion] that can bar the relitigation of an issue actually decided in a defendant's favor by a valid and final judgment." United States v. Rigas, 605 F.3d 194, 217 (3d Cir. 2010) (en banc) (quotation marks omitted).[3] The Double Jeopardy Clause's issue preclusion doctrine "ensures that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Id. (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)).

A criminal defendant who seeks to bar the relitigation of a particular issue "bears the burden of demonstrating that the issue he seeks to foreclose was actually decided in

---

[2] We exercise plenary review over double jeopardy challenges. United States v. Rigas, 605 F.3d 194, 203 n.7 (3d Cir. 2010) (en banc).

[3] Although both we and the Supreme Court have at times referred to these principles as ones of "collateral estoppel," we use the term "issue preclusion" in this opinion. See Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 232 n.10 (3d Cir. 2017) (noting that "[a]lthough the parties use the term 'collateral estoppel' to describe the question at issue," we follow the Supreme Court in using "issue preclusion," as it is "the more descriptive term").

the first proceeding," and that burden is a "heavy" one.  Id.  Moreover, because "it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the [issue preclusion] defense will be available to a defendant."  Id. at 218 (quotation marks omitted).

At the same time, this doctrine "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality."  Ashe, 397 U.S. at 444.  Under this approach, we "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," with a view to "all the circumstances of the proceedings."  Id. (quotation marks omitted).

The District Court instructed the jury that in order to convict Frangos and Liberty on the substantive wire fraud charges, the Government needed to prove three elements for each wire fraud count:  (1) that they "knowingly devised or willfully participated in a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises," (2) that they "acted with the intent to defraud," and (3) "that in advancing, furthering, or carrying out the scheme, [they] transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission" of any such communication.  App. 500–01.

Frangos and Liberty contend on appeal that their "sole defense at trial was that they lacked fraudulent intent because [Frangos] always acted in good faith."  Frangos Br.

5

31–32.  In other words, they claim that they only contested the second element of the substantive wire fraud charges, and that therefore, the jury could not have acquitted them on any other grounds.  But our review of the trial record leaves us unpersuaded by that contention.

Although we review this Double Jeopardy challenge <u>de novo</u>, our examination of the record confirms the District Court's conclusion that Frangos' and Liberty's defense did not, in fact, "rely exclusively on Frangos's assertion of good faith."[4] <u>United States v. Kousisis</u>, No. CR 18-130, 2019 WL 4126484, at \*7 (E.D. Pa. June 17, 2019).  While good faith was "an important component, their defense also relied on the relative paucity of evidence inculpating Frangos, and sought to cast doubt on Frangos's involvement with any scheme to defraud."  <u>Id.</u>  It is true, as Frangos and Liberty argue, that their closing statement focused primarily on what they characterized as the Government's failure to prove good faith.  But even though this may have been the focus of Frangos' closing, there were evidentiary shortcomings, pointed out to the jury, on the third element of the substantive wire fraud charges:  that the charged wirings were not made in furtherance of the scheme or that one or more of the charged wirings were not made or caused by Frangos.  Much of the crucial evidence of Frangos' alleged involvement in the scheme overlapped in the proof and defense of both of the first two elements of the substantive wire fraud charges.  Frangos cannot, however, carry his heavy burden of proving that the jury necessarily decided that he was not guilty on the acquitted wire fraud counts because

_____

[4] We follow the parties and the District Court in using the terms "good faith" and "lack of intent to defraud" interchangeably.

of lack of intent to defraud when there is a clear other basis for that acquittal in a failure to prove that the wirings were made as a part of the scheme or that Frangos made them or caused them to be made. Accordingly, the District Court did not err in declining to grant Frangos' and Liberty's motion on this ground.

B.

Frangos and Liberty contend in the alternative that retrial is barred as to the conspiracy count because the "core" of the conspiracy and wire fraud charges are the same. As the District Court correctly noted, "retrial on a conspiracy count following acquittal on a substantive offense does not" in and of itself "offend the Double Jeopardy Clause, because 'a substantive crime and a conspiracy to commit that crime are not the same offence for double jeopardy purposes.'" Kousisis, 2019 WL 4126484, at *7 (quoting United States v. Felix, 503 U.S. 378, 389 (1992)). But Frangos and Liberty posit that this appeal is controlled by the Supreme Court's decision in Sealfon v. United States, in which the Court held that an acquittal on a conspiracy charge barred a later conviction on a corresponding substantive offense where "[t]he basic facts in each trial were identical." 332 U.S. 575, 580 (1948).

Frangos' and Liberty's argument is unavailing. While it is true, as Frangos and Liberty note, that the substantive wire fraud charges incorporate by reference almost all of the conspiracy charge's allegations, the conspiracy charge encompasses a greater set of communications and acts than the four specific communications on which criminal liability for the substantive wire fraud charges hinged. By the indictment's own terms, the scheme to defraud described in the substantive charges is tied directly to those counts'

7

specified communications.  Moreover, the Government provides a number of examples of trial evidence germane only to the conspiracy charge, showing a "wide variety of other acts, statements, and transmissions" that were not offered to prove the substantive wire fraud charges.  Gov. Br. 51.  And Frangos and Liberty fail to explain why the specific trial evidence identified by the Government as relevant only to the conspiracy charge was also probative of their criminal liability — or lack thereof — on the substantive counts. Accordingly, we conclude that the "basic facts" in a retrial of the conspiracy charge would not rely solely on "identical" facts used (unsuccessfully) to prove the substantive charges in the first trial, and the District Court correctly denied Frangos' and Liberty's motion to dismiss on this ground as well.

## III.

For the foregoing reasons, we will affirm the District Court's order denying the motion to dismiss.