J-E01002-24

2024 PA Super 174

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
GABRIEL CRUZ :
:
Appellant : No. 2084 EDA 2020

Appeal from the PCRA Order Entered September 24, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011957-2010

BEFORE: LAZARUS, P.J., BOWES, J., STABILE, J., DUBOW, J., KUNSELMAN,
J., NICHOLS, J., KING, J., SULLIVAN, J., and LANE, J.

OPINION BY BOWES, J.: **FILED AUGUST 08, 2024**

Felix Santos was left in a persistent vegetative state after he received

puncture wounds to his heart, lung, and bowel that caused him to lose so

much blood that he suffered hypoxic brain damage. He sustained these

injuries as a consequence of Appellant Gabriel Cruz restraining him while Jose

Torres stabbed him repeatedly in the chest and torso. Appellant was convicted

by a jury of both aggravated assault—causing serious bodily injury and

attempted murder. He now contends that, because the jury did not separately

render a finding that Mr. Santos sustained serious bodily injury in connection

with the attempted murder charge, his enhanced sentence for that offense is

illegal pursuant to ***Apprendi v. New Jersey***, 530 U.S. 466 (2000). While we

agree that Appellant's constitutional rights were violated, we reject his claim

that his sentence is illegal. Rather, because it is manifest that Appellant

suffered no harm from the ***Apprendi*** error, his illegal-sentence challenge is unavailing. Therefore, we affirm the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").

## I.    Case History

On May 9, 2010, a melee broke out among neighbors in Philadelphia. Hostilities began after Appellant's mother-in-law spat in the face of Mr. Santos's son when he refused to move his car from a parking spot. While Mr. Santos went into his home to call the police, Torres, who is Appellant's brother-in-law, threatened to kill Mr. Santos and then battered his car with a shovel. Mr. Santos then emerged from his residence and struck Torres with a baseball bat before the police arrived and instructed everyone to return to their homes. Shortly thereafter, Mr. Santos received a call informing him that Torres had attacked Mr. Santos's teenage nephew who lived across the street. When the Santoses went outside, violence erupted among the men, women, and children, and only ended after Torres stabbed Mr. Santos while Appellant and another man held his arms then left him bleeding on his porch.

Following Appellant's identification by several witnesses, he was arrested and charged with attempted murder, aggravated assault, criminal conspiracy, unlawful restraint, terroristic threats, simple assault, and recklessly endangering another person. The criminal complaint included the following supplemental allegations following the list of charges:

> At or near the 700 block of West Butler Street, [Appellant] and his cohorts attempted to kill the victim, [Mr. Santos], or knowingly,

intentionally, or recklessly under circumstances manifesting an extreme indifference to the value of human life [and] **inflicted serious bodily injury** on the victim. [Appellant] and his co-conspirators did this by stabbing the victim multiple times in the chest. [Appellant] acted in concert with another or others.

Criminal Complaint, 5/27/10, at 2 (capitalization altered, emphasis added).

The cases against Appellant, Torres, and the third defendant proceeded to a joint jury trial while Mr. Santos remained unconscious, attached to a ventilator, and fed through a tube placed directly into his stomach. Appellant did not contest the nature of the injuries, but contended that he did not participate in the assault of Mr. Santos. Specifically, counsel described Appellant's defense as follows during opening statements:

[Y]our heart goes out to the complainant in this matter. It has to go out to somebody that's on life support in the way he is right now. But you know what, that's not what we're here for. We're not here for that. We're here to see was it this man, [Appellant], or anybody else was it them, are they the ones that did it. That's the question. That's what has to be decided.

N.T. Trial, 9/20/12, at 51. Indeed, no defendant disputed the medical evidence concerning the nature and extent of Mr. Santos's injuries. *See* N.T. Trial, 9/24/12, at 80-82.

Following the close of evidence, the trial court instructed the jury that, in order to find Appellant guilty of attempted murder, it must conclude that the Commonwealth proved beyond a reasonable doubt that Appellant or a co-conspirator stabbed Mr. Santos, that the stabbing was done with the specific intent to kill Mr. Santos, and that the stabbing was a substantial step toward committing murder. *See* N.T. Trial, 9/28/12, at 119-20. In turn, for the

charge of "aggravated assault, causing serious bodily injury," the trial court instructed the jury that guilt had to be based upon the finding beyond a reasonable doubt that Appellant "caused serious bodily injury to [Mr.] Santos." *Id*. at 122. The court further defined the term "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ."[1] *Id*. The jury found Appellant guilty of both crimes.[2]

The trial court initially sentenced Appellant to an aggregate term of forty to eighty years of imprisonment, composed of consecutive sentences of twenty to forty years for attempted murder, ten to twenty years for aggravated assault, and ten to twenty years for conspiracy. However, the court later vacated that judgment of sentence and, on January 14, 2014, resentenced him to an aggregate term of thirty to sixty years of imprisonment upon determining that Appellant's aggravated assault conviction merged with attempted murder for sentencing purposes, indicating that both convictions

_____

[1] This is nearly identical to the definition include in the Crimes Code. *See* 18 Pa.C.S. § 2301 (defining "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

[2] The jury also convicted Appellant of conspiracy to commit aggravated assault, but acquitted him of conspiracy to commit murder. The Commonwealth *nolle prossed* the remaining charges.

were based upon the same criminal act.  **See** 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.").

On direct appeal, Appellant challenged the sufficiency of the evidence to sustain his convictions and the discretionary aspects of his sentence.  Finding no merit in his claims, we affirmed his judgment of sentence, and our Supreme Court denied his *nunc pro tunc* petition for discretionary review.  **See Commonwealth v. Cruz**, 122 A.3d 446, 2015 WL 7187959 (Pa.Super. 2015) (unpublished memorandum), *appeal denied*, 188 A.3d 1120 (Pa. 2018).

Appellant filed a timely *pro se* PCRA petition.  The court appointed Thomas F. Coleman, Esquire, who sought to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).  Among the issues addressed by Attorney Coleman was Appellant's claim that sentencing counsel should not have complained about the discretionary aspects of his sentence, but instead asserted that it was illegal because it was beyond the statutory maximum.  **See Turner**/**Finley** Letter, 3/16/20, at 28.

Attorney Coleman analyzed the claim with reference to two statutes. First, regarding felonies generally, § 1103 of the Crimes Code provides that, with exceptions not relevant here, someone convicted of a first-degree felony may be sentenced "for a term which shall be fixed by the court at not more

than 20 years." 18 Pa.C.S. § 1103(1). Second, and more specifically, § 1102(c) provides:

> Notwithstanding [§] 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder . . . where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than [forty] years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than [twenty] years.

18 Pa.C.S § 1102(c).

Having observed that Mr. Santos's stab wounds were life-threatening and left him comatose, Attorney Coleman concluded that Appellant's sentences of ten to twenty years for conspiracy and twenty to forty years for attempted murder were not unlawful, but rather the maximum sentences authorized by the respective statutes. *See Turner/Finley* Letter, 3/16/20, at 24, 28-29. The PCRA court, agreeing with counsel as to the overall lack of merit in Appellant's petition, issued notice of its intent to dismiss it without a hearing. Appellant did not file a response, and the court entered orders allowing Attorney Coleman to withdraw and dismissing the petition.

Appellant filed a timely notice of appeal and the PCRA court issued an order pursuant to Pa.R.A.P. 1925(b). Newly-appointed counsel, Matthew Sullivan, Esquire,[3] filed a Rule 1925(b) statement contending that the court should have held a hearing on an claim concerning an alibi witness, and the

_____

[3] Another attorney was appointed and permitted to withdraw in the interim.

- 6 -

trial court addressed that issue in its Rule 1925(a) opinion. However, in this Court, Attorney Sullivan jettisoned that claim of error in favor of a claim that Attorney Coleman provided ineffective assistance in failing to challenge the legality of Appellant's attempted-murder sentence pursuant to **Apprendi**.[4] **See** Appellant's brief at 5. The Commonwealth conceded the facial plausibility of Appellant's **Apprendi** claim and suggested a remand for the PCRA court to consider it in the first instance. **See** Commonwealth's brief at 8. Yet it noted that, despite this Court's precedent to the contrary, there was "a strong argument" that the harmless error analysis employed by federal courts should be considered to validate the sentence. **Id**. at 8 n.4.

Rather than remand for litigation of the ineffectiveness claim, a three-judge panel of this Court *sua sponte* examined the underlying issue concerning the legality of Appellant's sentence and held that the sentence was unlawful pursuant to **Apprendi**. The author of the instant opinion filed a concurrence, agreeing that the majority's ruling was correct under existing precedent, but advocated for that precedent to be overruled in favor of the federal harmless error paradigm. The Commonwealth filed an application for *en banc*

---

[4] The new claim of Attorney Coleman's ineffectiveness was properly raised on appeal pursuant to **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021) ("[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal."). We further note that Appellant fully briefed all three prongs of his ineffective assistance claim in accordance with **Bradley** and **Commonwealth v. Lawrence**, 309 A.3d 152, 156 (Pa.Super. 2023).

reargument which we granted, prompting the withdrawal of the prior memorandum. *See Commonwealth v. Cruz*, 2084 EDA 2020, 2023 WL 2003971 (Pa.Super. Feb. 15, 2023) (non-precedential decision), *reargument granted, memorandum withdrawn*, 2084 EDA 2020, 2023 WL 3108559 (Pa.Super. Apr. 27, 2023).

The parties filed substituted briefs and the matter was scheduled for oral argument. However, we granted an unopposed application to submit the case for a decision on the briefs. Accordingly, the following question is now ripe for our disposition: "Does the trial court's sentence violate the Sixth Amendment under *Apprendi* where the court imposed an enhanced sentence for attempted murder, even though the jury did not render any finding regarding the predicate fact for the enhanced sentence?"[5] Appellant's substituted brief at 5 (citation omitted).

## II. Pertinent Precedent

### A. *Apprendi* and its Application in Federal Courts

We begin our review with an examination of the *Apprendi* decision and how it applies to sentencing challenges in federal court. In *Apprendi*, the defendant received an enhanced sentence pursuant to a statute that permitted

---

[5] Appellant in his substituted brief, in accordance with this Court's withdrawn panel decision, directly questions the legality of his sentence rather than alleging that Attorney Coleman was ineffective. Therefore, we have no cause to consider or discuss the elements of an ineffectiveness claim in determining whether to affirm the PCRA court's order dismissing his petition.

the trial judge to find by a preponderance of the evidence at sentencing that the shooting at issue was a hate crime.  The New Jersey Supreme Court held that the statute was valid because the racial bias was not an element of the underlying crime that had to be submitted to the jury to be found beyond a reasonable doubt.  The U.S. Supreme Court disagreed, holding that the due process clause of the Fourteenth Amendment and the Sixth Amendment's right to a trial by jury mandate that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  . . .  It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Apprendi*, 530 U.S. at 490 (cleaned up).[6]

The question then became what to do about *Apprendi* violations.  The U.S. Supreme Court was presented with this issue in *United States v. Cotton*, 535 U.S. 625 (2002).  In *Cotton*, the operative indictment alleged that the defendants engaged in a conspiracy to possess and distribute a "detectable" amount of cocaine base but did not indicate any quantities.  The defendants were found guilty at a trial in which the amount of drugs was

---

[6] In *Blakely v. Washington*, 542 U.S. 296, 303–04 (2004), the High Court clarified that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings" beyond those made by the jury.  *Id*. at 303-04.

among the proffered evidence. An applicable statute set the statutory maximum sentence of twenty years for possession of a detectable amount of cocaine base with an increased maximum of life imprisonment if at least fifty grams was involved. The trial court determined at sentencing that the defendants possessed in excess of that threshold and sentenced them to maximum terms above twenty years.

*Apprendi* was decided while the case was on appeal, prompting the defendants to argue that *Apprendi* invalidated their sentences because the enhancing element of the drug weight was neither alleged in the indictment nor submitted to the jury. The Court of Appeals granted relief, concluding that the failure to set forth all elements of the offense in the indictment deprived the court of jurisdiction to impose a sentence for the offense. The High Court reversed, first ruling that a defect in a federal indictment is not jurisdictional. *See Cotton*, 535 U.S. at 629-31.

Next, the *Cotton* Court considered whether the defendants were entitled to relief based upon the federal plain-error test, which permits an appellate court to correct an error not raised at trial if the plain error affected substantial rights and seriously impacted the fairness of the proceedings. Ultimately, the Court found no lack of fairness because the evidence establishing the quantity of cocaine base was "overwhelming and essentially uncontroverted," such that the jury would have found that the requisite weight was involved. *Id*. at 633 (cleaned up). Thus, the *Cotton* Court held that

sentencing the defendants based on facts not included in the indictment or presented to the jury did not amount to plain error.

The U.S. Supreme Court considered **Apprendi** violations under the rubric of harmless error in **Washington v. Recuenco**, 548 U.S. 212 (2006). In that case, the defendant threatened his wife with a handgun during a fight and was charged with "assault in the second degree, *i.e.*, intentional assault with a deadly weapon, to-wit: a handgun." **Id**. at 215 (cleaned up). A jury convicted him and made the specific factual finding that he was armed with a deadly weapon at the time of the offense. At sentencing, the trial court found that he had possessed a "firearm" during the commission of the crime, and thus imposed a three-year mandatory sentence enhancement rather than the one-year enhancement pertinent to possession of a generic "deadly weapon." **Id**. On appeal, the defendant argued, and the prosecution conceded, that the sentence violated **Apprendi** and **Blakely**. The prosecution advocated a finding of harmless error, but the Washington Supreme Court vacated the sentence, deeming the error structural and thus not amenable to a harmless-error analysis. **Id**. at 216.

The U.S. Supreme Court disagreed, relying heavily on its decision in **Neder v. United States**, 527 U.S. 1 (1999). There, the Court observed that "most constitutional errors can be harmless," with the rare exceptions being structural errors that "contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,"

rendering the entire trial process "fundamentally unfair."[7] *Id*. at 8-9 (cleaned up). The *Neder* Court found "[t]he error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review." *Id*. at 8. Consequently, the *Neder* Court held that "the omission of an element is an error that is subject to harmless-error analysis[.]" *Id*. at 15. As such, "[w]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id*. at 17.

The *Recuenco* Court determined that *Neder* was indistinguishable from the case before it, explaining:

> Our decision in *Apprendi* makes clear that any possible distinction between an "element" of a felony offense and a "sentencing factor" was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding. Accordingly, we have treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt. The only difference between this case and *Neder* is that in *Neder*, the prosecution failed to prove the element of materiality to the jury beyond a reasonable doubt, while here the prosecution failed to prove the sentencing factor of "armed with a firearm" to the jury beyond a reasonable doubt. Assigning this distinction constitutional significance cannot be reconciled with our recognition in *Apprendi* that elements and sentencing factors must be treated the same for Sixth Amendment purposes.

_____

[7] The Court cited examples of structural error such as the complete deprivation of counsel, racial discrimination in jury selection, or a biased trial judge. *See Neder v. United States*, 527 U.S. 1, 8 (1999) (collecting cases).

*Recuenco*, 548 U.S. at 220 (cleaned up).  The Court concluded:  "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."  *Id*. at 222.  Hence, such Sixth Amendment violations may be deemed harmless.

Since *Recuenco* was decided, federal courts, as well as many state courts, have considered whether a violation of *Apprendi* and its progeny was harmless because proof of the missing element was overwhelming or uncontested before holding that relief is due.  *See*, *e.g.*, *United States v. Legins*, 34 F.4th 304, 322 (4th Cir. 2022) (collecting cases); *Niles v. State*, 555 S.W.3d 562, 572 (Tex. Crim. App. 2018) (collecting cases).

### B.    Application of *Apprendi* in Pennsylvania Courts

Shortly before the U.S. Supreme Court decided *Recuenco*, this Court was presented with an *Apprendi* challenge to an enhanced § 1102(c) sentence for attempted murder in *Commonwealth v. Reid*, 867 A.2d 1280 (Pa.Super. 2005).  In that case, Reid stabbed his victim eleven times then slashed her neck, requiring multiple surgeries and ongoing treatment.  He entered a *nolo contendere* plea to attempted murder, and the judge sentenced him to seventeen to forty years of imprisonment pursuant to § 1102(c).  On appeal, Reid claimed that his sentence was illegal pursuant to *Apprendi* because the Commonwealth did not put him on notice that he was charged with attempted murder causing serious bodily injury.  This Court found no *Apprendi* violation, observing that Reid was apprised by the criminal

information and the plea colloquy that he faced up to forty years, and he agreed with the facts of the victim's injuries. *Id*. at 1285.

The following year, after **Recuenco** was handed down, we again considered **Apprendi** in connection with § 1102(c) in **Commonwealth v. Johnson**, 910 A.2d 60 (Pa.Super. 2006). In that case, Johnson and his accomplice shot at a person who testified against Johnson's brother at a preliminary hearing. The initial shot aimed at the victim's head missed, but a subsequently-fired bullet struck her foot. Johnson was convicted of attempted murder and aggravated assault and sentenced to seventeen to forty years of incarceration for the attempted murder. On appeal, Johnson argued that his sentence was illegal because the evidence was insufficient to establish that the victim sustained serious bodily injury. This Court *sua sponte* examined the sentence under **Apprendi** and determined it illegal because:

> (1) [Johnson] was not charged with attempted murder resulting in serious bodily injury, (2) [Johnson] was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder. Thus, the jury verdict here was limited to a finding of guilt on the crime of attempted murder generally, for which the maximum sentence is twenty years.

*Id*. at 67–68 (cleaned up). While the trial court had deemed the sentence appropriate because the jury had found the existence of serious bodily injury in rendering the guilty verdict as to aggravated assault, this Court disagreed, explaining:

- 14 -

The fact that the jury may have considered the question of serious bodily injury when they were evaluating the Commonwealth's evidence supporting the charge of aggravated assault is not relevant to a sufficiency analysis on the separate charge of attempted murder where serious bodily injury results. The Courts of Pennsylvania have consistently respected the authority of a jury to find, or to decline to find, the existence of each element of each criminal offense. Nor is there authority for a trial court to reason to a verdict of guilt by tacking the finding of culpability of one element of a companion offense on to a separate criminal offense upon which the jury had also rendered a verdict.

*Id*. at 68 n.10 (cleaned up). Notably, the **Johnson** Court did not acknowledge the **Recuenco** decision and, since it raised the **Apprendi** issue *sua sponte*, there was no opportunity for the Commonwealth to argue for a harmless error analysis.

In the following decade, much of the appellate case law addressing **Apprendi** issues concerned its extension in **Alleyne v. United States**, 570 U.S. 99 (2013), to define any fact that increases a mandatory minimum sentence as an element of the crime which must be submitted to the jury. **Id**. at 103. For example, in **Commonwealth v. Watley**, 81 A.3d 108, 120 (Pa.Super. 2013) (*en banc*), Watley appealed from his sentence imposed on convictions for conspiracy, possession with intent to deliver ("PWID"), and firearms violations. At sentencing, the trial court applied a mandatory minimum based upon a statute requiring it if the judge at sentencing found by a preponderance of the evidence that a firearm was in close proximity to the drugs. Watley appealed, challenging the sufficiency of the evidence to sustain his convictions, and **Alleyne** was decided during the pendency of the

appeal. As it implicated the legality of the sentence, this Court *sua sponte* considered the issue.

Nonetheless, this Court declined to disturb the sentence based upon the *Apprendi/Alleyne* violation, distinguishing *Johnson* and relying upon *Cotton*:

> [W]e find *Cotton* instructive and persuasive. Contrary to the defendant in *Johnson*, who contested the facts necessary to increase his sentencing maximum, namely, whether serious bodily injury resulted from shooting the victim therein in the foot, [Watley] never disputed the evidence that the firearms were in close proximity to the [drugs]. Rather, [Watley] challenged that he was the person present in the vehicle who fled the scene, *i.e.*, identity. [Watley] certainly was on notice that the Commonwealth sought to prove that he possessed two firearms and the jury was presented with evidence of those facts. More important, the jury's finding on the two firearms charges in this matter is directly aligned with the requirement under [the mandatory minimum statute] that the defendant possess a gun . . . . Succinctly put, the jury did render a specific finding as to whether [Watley] possessed the handguns found in the car; the reason it did not do so in conjunction with the PWID count is that the prevailing law at the time, unlike in . . . *Johnson*, did not require such a procedure.
>
> Similar to *Cotton*, the uncontroverted evidence in the instant case established that one firearm was located in the same glove compartment as the drugs and another handgun was located on the passenger-side floor in close proximity to the drugs, and the jury determined beyond a reasonable doubt that [Watley] possessed those firearms. Therefore, the facts necessary to establish application of the mandatory minimum sentence not only were essentially undisputed and overwhelming, they were determined by the jury. Since [Watley] was convicted of PWID and unlawfully possessing two firearms relative to the same incident, the factual predicates for determining the mandatory minimum were proven to a jury beyond a reasonable doubt, and his sentence is not illegal.

*Id*. at 120–21 (cleaned up).

- 16 -

However, the following year a different *en banc* panel of this Court invalidated in its entirety the mandatory minimum statute at issue in **Watley** in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (*en banc*). The Court observed that the statute was plainly in conflict with the mandate of **Apprendi** and **Alleyne** that the sentence-enhancing element, in that instance possession of a firearm, "be pleaded in the indictment, and . . . found by the jury beyond a reasonable doubt before the defendant may be subjected to an increase in the minimum sentence." **Id**. at 98. With the enactment expressly calling for enhanced sentencing based upon judicial fact-finding by a preponderance standard, this Court concluded that the unconstitutional provision was not severable, but needed to be rewritten by our legislature to be workable. **Id**. at 103.

The Commonwealth, citing **Neder**, advocated for a finding of harmless error rather than reversal. The **Newman** Court did not reject the applicability of harmless error to **Apprendi**/**Alleyne** violations. Rather, it undertook the harmless error analysis and concluded that the evidence before it was "not necessarily overwhelming" such that it could not "say with finality that a panel of lay jurors would undoubtedly conclude from the evidence here that the firearm was in close proximity to the drug contraband." **Id**. at 100. Hence, **Newman** accepted the possibility that an **Apprendi** error could be harmless.

The first time the U.S. Supreme Court's **Recuenco** decision was acknowledged by a Pennsylvania appellate court was in **Commonwealth v.**

***Wolfe***, 140 A.3d 651 (Pa. 2016) ("***Wolfe II***"). There, a jury convicted Wolfe of involuntary deviate sexual intercourse pursuant to the subsection of the criminal statute providing "that it is a felony of the first degree to engage in deviate sexual intercourse with a complainant who is less than sixteen years of age." ***Id***. at 653. The trial court sentenced him to a mandatory minimum sentence pursuant to a statute structured as the one in ***Newman***. Specifically, it stated that the age was not an element of the crime, but a factor to be determined by the judge at sentencing by a preponderance of the evidence. On appeal, this Court *sua sponte* ruled the sentence to be illegal because ***Newman*** mandated that such a statute be struck down unconstitutional.[8]

Our Supreme Court granted allocatur on the question of whether this Court erred by invalidating the statute as facially unconstitutional. Among the Commonwealth's arguments in support of reversal were that there was no judicial fact-finding in the case because the jury already determined that the

---

[8] The author of this Court's ***Wolfe*** opinion, then-Judge and now-Justice Mundy, noted that she had expressed her disagreement in ***Newman*** with the ruling that the ***Alleyne***-violative provision was not severable, and that a harmless error analysis is apt in considering the legality of such sentences. ***See Commonwealth v. Wolfe***, 106 A.3d 800, 803 n.4 (Pa.Super. 2014) ("***Wolfe I***"). The author of the instant opinion, joined by the third panel member, also contended that ***Newman*** was wrongly decided and "where the fact-finder's findings already encompass the necessary facts needed to subject a defendant to a mandatory minimum sentence, or the facts have been stipulated to," the error is harmless. ***Id***. at 808 (cleaned up) (Bowes, J., concurring).

victim was under sixteen, and that any error was harmless pursuant to **Neder**, **Cotton**, and **Recuenco**. **Id**. at 656-57.

In a fractured ruling, our High Court ultimately affirmed this Court's holding that the mandatory minimum statute was "irremediably unconstitutional on its face, non-severable, and void." **Id**. at 663. The Court declined to consider whether the error was harmless since the jury had indeed found beyond a reasonable doubt the fact that increased the punishment, namely the victim's age, in convicting him of the underlying offense. It explained: "Although we realize that the Supreme Court of the United States and other courts have found **Apprendi**-based errors to be harmless in various cases, . . . none of these concerned a scenario in which the underlying sentencing statute was itself found to be invalid and non-severable."[9] **Id**. at 662.

_____

[9] The statute at issue in the instant appeal, namely § 1102(c), did not come under scrutiny in the aftermath of **Alleyne** because, unlike the mandatory minimum statutes like the one at issue in **Wolfe II**, § 1102(c) does not call for judicial factfinding by a preponderance standard at sentencing. Rather, as quoted above, it provides that "where serious bodily injury results" the court may impose a higher sentence, without specifying how or by whom the enhancing fact is determined. **See** 18 Pa.C.S. § 1102(c) (quoted in full at page 6 *infra*).

Thus, unlike the statute at issue in **Wolfe II**, § 1102(c) is not facially unconstitutional and void and consequently incapable of producing a legal sentence. The Dissent fails to appreciate this distinction or its significance. As a result, our esteemed colleagues overstate their case insofar as they suggest that **Wolfe II** foreclosed the application of harmless error in cases such as the one presently before us where the sentence did **not** lack statutory authorization.

Of note, (now-Chief) Justice Todd, joined by Justice Dougherty, dissented. Justice Todd both disputed the ruling as to the unconstitutionality of the statute because Wolfe "was charged and convicted of an offense which includes as an element the sentencing fact triggering the mandatory minimum sentence," and posited that, even if the statute were infirm, the federal harmless error framework should apply. *Id*. at 670-71 (Todd, J. dissenting) (citing, *inter alia*, **Recuenco**). Justice Todd opined that the failure to find harmless error in that case, "where a jury **actually found** beyond a reasonable doubt the triggering fact," was "inconsistent with the teachings of **Alleyne**, subsequent state and federal caselaw, and common sense." *Id*. at 671 (emphasis in original).

The issue of an **Apprendi** violation concerning a § 1102(c) sentence resurfaced in this Court the following year in **Commonwealth v. Barnes**, 167 A.3d 110 (Pa.Super. 2017) (*en banc*). There, Barnes had strangled his victim into unconsciousness twice and left her in a dumpster headfirst with a broken vertebra, hypothermia, and other lacerations and contusions. A jury convicted him of, *inter alia*, attempted murder and aggravated assault—causing serious bodily injury. The trial court sentenced Barnes to twenty to forty years of imprisonment on the attempted murder conviction, but concluded that the conviction for aggravated assault merged with it for sentencing purposes because both convictions arose from the same act of choking the victim.

On appeal, Barnes contended that his attempted murder sentence violated *Apprendi* because serious bodily injury was not submitted to the jury as an element of that offense. This Court agreed based upon our ruling in *Johnson*. We observed that Barnes, like Johnson, was not put on notice that he was being charged with attempted murder resulting in serious bodily injury, as neither the complaint nor the information alleged that he caused serious bodily injury when he attempted to kill his victim. *Id*. at 117. Also akin to *Johnson*, the trial court did not charge the jury that it was required to find serious bodily injury as an element of the attempted murder offense. *Id*. at 118. Hence, *Apprendi* was violated.

While the *Barnes* opinion does not reflect that the Commonwealth invoked *Neder* or *Recuenco* to advocate harmless error *per se* as a basis for affirmance, the Commonwealth did argue that the jury's finding of serious bodily injury in connection with the aggravated assault conviction was sufficient to justify the enhanced sentence. We rejected that contention on two bases: (1) *Johnson* correctly ruled that the jury's finding as to one charge could not be used to infer the same finding as to the other; and (2) because inconsistent verdicts are deemed an exercise of lenity, it would have

been "perfectly acceptable for the jury here to find serious bodily injury with respect to aggravated assault but not attempted murder."[10]  *Id*. at 120.

This Court had cause to revisit *Apprendi* in *Commonwealth v. Bickerstaff*, 204 A.3d 988 (Pa.Super. 2019).  In that case, Bickerstaff shot a man at close range, causing him to suffer cracked ribs and punctured lungs and requiring extensive surgery.  *Id*. at 990-91.  The Commonwealth did not specifically charge him with causing serious bodily injury in connection with attempted murder, and the trial court did not instruct the jury to make a finding in connection with that charge.  Nonetheless, the verdict slip included an interrogatory asking the jury to indicate whether the attempt caused serious bodily injury.  The jury found Bickerstaff guilty of attempted murder and answered yes to the interrogatory, and also convicted him of aggravated assault—causing serious bodily injury based upon the same conduct.

_____

[10] The Dissent, citing the above discussion of *Johnson* and *Barnes*, suggests that we are in agreement that *Apprendi* compelled the results in those cases. *See* Dissenting Opinion at 2.  That is false.  We agree that those decisions **held** that *Apprendi* dictated finding the sentences in those cases to be illegal. As our discussion *infra* details, *Apprendi* actually does not mandate a finding of illegality if the error was harmless.

The Dissent further notes that "the author of the instant opinion acknowledges that as a member of the three-judge panel originally deciding this case, [Judge Bowes] averred the grant of relief to [Appellant] on *Apprendi* grounds was correct under existing precedent."  *Id*. at 2-3 n.3.  We fail to see the significance of this observation, as it is beyond peradventure that, unlike this *en banc* panel, the three-judge panel that originally reviewed this case was bound by the *Barnes* decision.

Bickerstaff was sentenced to twenty to forty years for the attempted murder. *Id*. at 991.

In a PCRA petition, Bickerstaff claimed that his trial counsel was ineffective in failing to challenge as illegal under ***Apprendi*** the enhanced § 1102(c) sentence where the Commonwealth did not give him notice of its intent to prove serious bodily injury as an element of attempted murder. This Court agreed based upon the lack of notice, ruling that Bickerstaff "was essentially ambushed with the verdict sheet's special interrogatory that raised for the first time a question about serious bodily injury in connection with attempted murder." ***Id***. at 997.

The Commonwealth argued that any error was harmless because Bickerstaff was on notice that serious bodily injury would be at issue as an element of the aggravated assault charge. It further observed that the evidence that the victim suffered serious bodily injury was overwhelming and uncontroverted, noting that Bickerstaff had stipulated to the medical records establishing the extensive serious injuries. ***Id***. at 994-95. This Court rejected the argument, relying heavily on ***Johnson*** and ***Barnes*** with no reference to ***Reid*** or ***Watley***. Without any examination of whether Bickerstaff was prejudiced by a lack of notice that the extent of the victim's injuries pertained to the attempted murder charge as well as the aggravated assault charge, the Court held that "the special interrogatory presented to the jury did not serve

to mitigate the fundamental injustice in the present case," and vacated the sentence as illegal. *Id*. at 998.

Finally, our Supreme Court undertook an assessment of this Court's *Apprendi* jurisprudence in *Commonwealth v. King*, 234 A.3d 549 (Pa. 2020). There, King shot a firearm at his victim nine times, hitting her in the ankle and lower back. He was charged with attempted murder and aggravated assault, among other crimes. The information did not reference § 1102(c) or otherwise allege that serious bodily injury resulted from the attempted murder.

King's defense at trial was that someone else was the shooter. He did not contest the severity of the injuries, stipulating that the victim suffered shattered ankle and hip bones that required multiple surgeries and physical therapy. The jury slip included an interrogatory asking whether, in the event it found King guilty of attempted murder, serious bodily injury resulted. The jury found him guilty and answered the interrogatory in the affirmative, and further convicted him of aggravated assault and other offenses. The trial court sentenced him to twenty to forty years for the attempted murder. *Id*. at 552-53.

King filed a post-sentence motion challenging the legality of his sentence, citing the Commonwealth's failure to provide notice that it intended to seek the enhanced sentence for attempted murder. The trial court rejected the claim, opining that *Johnson*'s references to *Apprendi's* notice

- 24 -

requirements were *dicta* and that the jury properly found the sentence-increasing facts as ***Johnson*** demanded. On appeal, this Court affirmed on the basis that the notice was adequate pursuant to ***Reid***, and the verdict slip satisfied ***Johnson*** and ***Barnes***. ***Id***. at 554-56.

Our Supreme Court granted allocatur to decide, *inter alia*, whether this Court denied King his "due process and Sixth Amendment rights in holding that the Commonwealth need not provide formal notice to a defendant when seeking to prosecute him for an aggravated offense," specifically § 1102(c)'s forty-year maximum. ***Id***. at 556. King argued that ***Barnes***, ***Bickerstaff***, and ***Wolfe II*** mandated that a defendant receive formal notice that the Commonwealth intended to prove serious bodily injury and seek the enhanced sentence. The Commonwealth maintained that ***Apprendi*** did not invalidate the sentence. Specifically, it contended that the notice King received was adequate under ***Reid***; that ***Johnson***, ***Barnes***, and ***Bickerstaff*** did not apply since the jury did find serious bodily injury in connection with the attempted murder charge; that ***Bickerstaff*** was wrong insofar as it imposed a *per se* rule when the information does not reference § 1102(c); and that, even if there was an ***Apprendi*** violation, it was harmless error under ***Cotton*** because the evidence of serious bodily injury was overwhelming and uncontested and was not a basis of King's trial defense. ***Id***. at 559.

The High Court agreed with King that there was an ***Apprendi*** violation, holding that, "when the Commonwealth intends to seek an enhanced sentence

for attempted murder resulting in serious bodily injury under [§] 1102(c), the Commonwealth must include a citation to the statutory provision as well as its language in the charging documents." *Id*. at 562. The Court went on to say: "Because we decide this matter on due process notice grounds, we need not address in detail the Superior Court's decisions in *Barnes*, *Johnson*, *Reid*, and *Bickerstaff*."[11] *Id*. at 562-63.

The remaining issue was the proper remedy for the *Apprendi* violation. Noting that "the element of serious bodily injury in connection with attempted murder was indeed submitted to the jury and found beyond a reasonable doubt," the question became whether the lack of notice in the information made the sentence illegal. *Id*. at 563. The Court concluded it did not automatically result in an invalid sentence, ruling that, "[s]ince a proper notice would permit the sentence, we agree that the instant error is amenable to harmless error review." *Id*. at 566.

_____

[11] The Dissent suggests that *King* is irrelevant to our discussion because the Court in that case "clarified that *Apprendi* was **not** the proper analytical framework for King's lack[-]of[-]formal[-]notice argument." Dissenting Opinion at 4 (emphasis in original). While the *King* Court noted that *Apprendi* did not address the necessity pursuant to the Fifth Amendment of referring to sentence-enhancing facts in a federal grand jury indictment, it did consider the Fourteenth Amendment's mandate that the states afford due process of law. *See King*, 234 A.3d at 560. Accordingly, our Supreme Court observed that "*Apprendi* thus implicates two related areas of law: notice as required by due process and the right to a jury trial." *Id*. The fact that the *King* Court opted to decide the case only by examining the Fourteenth Amendment *Apprendi* violation instead of the Sixth Amendment *Apprendi* violation does not, as the Dissent opines, mean that *Apprendi* was not implicated in *King* or that *King* is inapposite to our present analysis.

The ***King*** Court then conducted a harmless error analysis and found "that the Commonwealth ha[d] met its burden of establishing that the error was harmless beyond a reasonable doubt." ***Id***. The Court explained:

Similar to ***Cotton***, the evidence of serious bodily injury in this case was overwhelming and uncontroverted. Moreover, this is not a case where the judge made the requisite finding, as in ***Cotton***, but rather it was stipulated to and found by the jury beyond a reasonable doubt. King never contested the severity of [the victim's] injuries, but rather stipulated that, as a result of two gunshot wounds, [she] suffered a shattered hipbone and anklebone, requiring multiple surgeries and high intensity inpatient occupational and physical therapy. While King did not receive formal notice of the Commonwealth's intent to seek the enhancement, King received *de facto* notice, at various points before trial, that the Commonwealth was seeking the enhancement. For example, the factual summaries in the charging documents made clear that [the victim] suffered serious bodily injury. Moreover, the Commonwealth advised King that the minimum penalty for attempted murder if convicted was seventeen and one-half years, signaling that the Commonwealth intended to seek the enhancement. Finally, the Commonwealth and King's attorney reviewed and agreed to the content and form of the verdict sheet prior to jury deliberations, which included a special interrogatory regarding whether [the victim] suffered serious bodily injury as a result of the attempted murder.

We also find persuasive the Commonwealth's point that its failure to provide formal notice of its intent to seek the enhanced sentence did not affect King's choice of defense or execution of that defense, considering King stipulated to [the victim's] injuries and instead sought to demonstrate that another unknown individual committed the crime. Therefore, the harmless nature of the error precludes a finding that the sentence was illegally imposed.

***Id***. at 566 (cleaned up).

In sum, the current status of Pennsylvania law regarding the applicability of harmless error review to an ***Apprendi*** claim differs depending

on which type of violation is at issue. If the infraction concerns the due process right to notice that the prosecution is seeking to prove a crime that contains a sentencing enhancement as an element, then *King* establishes that the error may be harmless. If the *Apprendi* violation implicates the Sixth Amendment right to a jury trial, then *Barnes* provides that the enhanced sentence is necessarily illegal, notwithstanding the views to the contrary expressed in *Watley* and *Newman*, and despite the U.S. Supreme Court's ruling that such violations of the U.S. Constitution are not structural and thus are harmless if the evidence of the enhancing element was uncontroverted or overwhelming.

### III.   Standard of Review and the Arguments of the Parties

With the above law in mind, we return to the instant case, beginning with our standard of review and the arguments of the parties. This appeal was taken from the order that dismissed Appellant's PCRA petition. "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Williams*, 244 A.3d 1281, 1286–87 (Pa.Super. 2021) (citation omitted).

Here, Appellant challenges not a ruling made by the PCRA court, but the legality of his sentence. "Issues relating to the legality of a sentence are questions of law. When the legality of a sentence is at issue, our standard of

review over such questions is *de novo* and our scope of review is plenary."

***Commonwealth v. Ramos***, 197 A.3d 766, 768–69 (Pa.Super. 2018) (cleaned up).

Appellant's argument is that ***Johnson*** and ***Barnes*** correctly established that it was illegal for the judge to sentence him according to the increased maximum sentence provided in § 1102(c) because the jury did not make a finding beyond a reasonable doubt that his attempt to murder Mr. Santos resulted in serious bodily injury. ***See*** Appellant's substituted brief at 12. He observes that both this Court and our Supreme Court have had the opportunity to overrule those decisions but have declined to do so. ***Id***. Appellant posits that there is nothing novel about this case to warrant a different result, and that we should hold his sentence to be illegal because he "was charged with one crime (attempted murder) and was convicted of another (attempted murder causing serious bodily injury) *sans* charge, jury instruction, or jury verdict." ***Id***. at 13.

The Commonwealth, on the other hand, advocates overruling ***Barnes***. It observes that the U.S. Supreme Court, in applying its own ***Apprendi*** decision to vindicate federal constitutional rights, expressly ruled in ***Recuenco*** that the Sixth Amendment violation of failing to submit to the jury an element of a crime, including facts that increase statutory maximum sentences, may

be harmless error.[12] **See** Commonwealth's substituted brief at 12-13. It observes that the federal harmless error paradigm generally, and the **Recuneco** decision specifically, was unanimously embraced by our Supreme Court in **King**. **Id**. at 16.

_____

[12] Indeed, the Commonwealth points to **Wilkerson v. Superintendent Fayette SCI**, 871 F.3d 221 (3d Cir. 2017), a case involving _habeas corpus_ review of a Pennsylvania conviction, to demonstrate that **Johnson** and **Barnes** are at odds with the federal courts on a matter of federal law:

> Had the jury been asked, it is inconceivable that it would not have made the requisite finding of serious bodily injury for Wilkerson to receive an enhanced sentence. Thus, because it is a near certainty that Wilkerson would have received the identical sentence had the jury been given the proper instruction, Wilkerson cannot demonstrate that this **Apprendi** error, or any ineffective-assistance-of-counsel claim derived from it, affected his substantial rights or seriously affected the fairness, integrity or public reputation of judicial proceedings.

Commonwealth's substituted brief at 15 (quoting **Wilkerson**, 871 F.3d at 238 n.17) (cleaned up).

We observe that the same can be said for the law of our sister states. **See**, **e.g.**, **Galindez v. State**, 955 So.2d 517, 524 (Fla. 2007) ("In light of the clear and uncontested record evidence of penetration regarding Count I, we hold that no reasonable jury would have returned a verdict finding there was no penetration. Accordingly, we find the error in this case harmless beyond a reasonable doubt." (citation omitted)); **Adams v. State**, 153 P.3d 601, 614 (Mont. 2007) ("Because the evidence that Adams used a gun while committing aggravated assault is uncontroverted, we conclude that the result would be the same; that Adams would have received an enhanced sentence based on use of a weapon had the jury been asked to make a finding on that issue. The error in this case is harmless."); **State v. Blackwell**, 638 S.E.2d 452, 459 (N.C. 2006) (finding harmless error in application of aggravating sentencing factor where there was "uncontroverted and overwhelming evidence that defendant committed the present crimes while on pretrial release for another offense").

Additionally, while noting that Appellant makes no meaningful defense of **Barnes**, the Commonwealth eschews **Barnes**'s reliance upon a jury's ability to render inconsistent verdicts, contending that "[u]nder the Supreme Court's decisions, the correct question is not whether the jury **could have** done so, but whether it is **likely** that the jury **would have** done so if properly instructed." **Id**. at 14 (emphases in original). The Commonwealth further observes that the **Johnson** and **Barnes** decisions disincentivize timely defense objections to **Apprendi** errors and instead "create a sentencing windfall that as a practical matter benefits only defendants with counsel careless enough not to raise the issue at trial **or savvy enough to know to withhold it**." Commonwealth's substituted brief at 11 (emphasis in original).

As for the case *sub judice*, the Commonwealth asserts that the lack of a jury instruction or finding of serious bodily injury as an element of attempted murder was harmless. It reiterated that Appellant only challenged his identification as a participant in the attack on Mr. Santos, he did not dispute the existence or severity of his wounds, and the uncontroverted evidence of Mr. Santos's resultant condition overwhelmingly satisfied the definition of serious bodily injury. In these circumstances, the Commonwealth argues "there is simply **no** likelihood, let alone a reasonable one, that a properly instructed jury would have failed to return a finding of 'serious bodily injury' in connection with the attempted murder charge." **Id**. at 18 (emphasis in original). Therefore, the error was harmless, the sentence is not illegal, and

Appellant was not prejudiced by Attorney Coleman's failure to raise the *Apprendi* claim. *Id*.

In reply, Appellant again advocates for the continued application of *Barnes* not upon any legal analysis, but on the basis that *stare decisis*, and the clarity and consistency of the prior rule, should not be flouted merely "to correct the Commonwealth's mistakes" of failing to observe *Apprendi* rights. *See* Appellant's substituted reply brief at 1. He asserts that fundamental fairness requires that we follow *Barnes* and vacate his sentence rather than reward the "last-ditch attempt at having the Court sweep aside the Commonwealth's mistake." *Id*. at 2. Notably, Appellant does not offer any argument that the constitutional error in his case harmed him in any way.

## IV. Holdings and Analyses

### A. Harmless Error Doctrine Applies to all *Apprendi* Violations

After thorough consideration of the parties' arguments and the pertinent decisional law, we conclude that the failure to submit serious bodily injury to the jury as an element of attempted murder, while violative of *Apprendi*, does not necessarily render an enhanced § 1102(c) sentence illegal. Rather, the constitutional violation is one that is subject to harmless error review, the same as the due process violation of failing to formally charge a defendant pursuant to § 1102(c), as was recognized by our Supreme Court in *King*.

Our reasoning for rejecting the *Barnes* Court's suggestion that a Sixth Amendment *Apprendi* violation results in a *per se* illegal sentence is as

follows. First, the **Neder**, **Cotton**, and **Recuenco** decisions, which are U.S. Supreme Court precedent on a matter of federal constitutional law, specify that an **Apprendi** error is **not** structural. This precedent was embraced by this Court's *en banc* decisions in **Watley** and **Newman**, and never rejected by our Supreme Court.[13] Yet the **Barnes** *en banc* panel failed to even acknowledge, let alone consider, harmless error as a basis for affirming a sentence imposed in violation of **Apprendi**.

Second, application of harmless error review to non-structural **Apprendi** violations is consistent with our High Court's **King** ruling that, where following the proper procedure would have permitted legal imposition of the sentence, the "error is amenable to harmless error review."[14] **King**, 234 A.3d at 566.

_____

[13] The Dissent would hold that we are precluded from applying federal court decisions interpreting the scope of the United States Constitution's guarantees because "in other contexts, the Pennsylvania Supreme Court has decided that federal statutes set a floor, not a ceiling, of constitutional protections for Pennsylvania criminal defendants." Dissenting Opinion at 5 n.8. However, our colleagues in dissent fail to acknowledge that where, as here, an appellant does not invoke the Pennsylvania Constitution and assert an argument that it provides greater protection than its federal counterpart, we limit our analysis to the United States Constitution and the relevant case law. **See**, **e.g.**, **Commonwealth v. Rosendary**, 313 A.3d 236, 241 n.3 (Pa.Super. 2024). Our decision today in no way precludes future litigants from asserting a claim that Pennsylvania affords greater protections than those recognized in **Apprendi** and its progeny.

[14] Moreover, applicability of the federal paradigm specifically where the Sixth Amendment portion of **Apprendi** was violated has been endorsed by at least three current members of our Supreme Court. **See Wolfe II**, 140 A.3d at

*(Footnote Continued Next Page)*

- 33 -

Third, **Barnes** misconstrued our **Watley** decision. In particular, **Barnes** cited **Watley** as supporting the notion that the factual finding as to one charge could not satisfy **Apprendi** as to another conviction. **See Barnes**, 167 A.3d at 119 (citing **Watley**, 81 A.3d at 119). However, the cited portion of the **Watley** opinion merely acknowledged **Johnson** before going on to, as described hereinabove, distinguish it and find harmless error in accordance with **Cotton**. **See Watley**, 81 A.3d at 119-20. Further, in embracing **Johnson**'s concerns about a jury's right to render inconsistent verdicts in declining to consider its explicit finding that the criminal act in question had indeed caused serious bodily injury, **Barnes** did not address **Watley**'s observation that the doctrine of permitting inconsistent verdicts "is used to prevent overturning convictions that are inconsistent with an acquittal on another charge, not to disregard a jury's factual findings on valid convictions." **Watley**, 81 A.3d at 119. Stated differently: "The fact that we accept a jury's ability to potentially exercise leniency does not require us to disregard, for purposes of sentencing, its uncontroverted determination of facts that subject a defendant to an increased punishment[.]" **Id**.

Fourth, as the Commonwealth notes, the effect of the **Barnes** ruling is to encourage a practice that is contrary to the axiomatic principle that, with rare exceptions, "a party must make a timely and specific objection at the

_____

670-71 (Todd, J., joined by Dougherty, J., dissenting); **Wolfe I**, 106 A.3d at 803 n.4 (Mundy, J.).

appropriate stage of the proceedings before the trial court" in order to preserve an issue for relief on appeal. *Commonwealth v. Russell*, 209 A.3d 419, 429 (Pa.Super. 2019). We have explained: "A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Spone*, 305 A.3d 602, 608 (Pa.Super. 2023). Under *Barnes*, a defendant is discouraged from objecting to *Apprendi* errors until after it is too late to remedy them knowing that, no matter how harmless the error, he will be entitled to a shorter sentence than our legislature provided.

Finally, we reject Appellant's argument that fundamental fairness requires us to grant him a sentencing windfall by following *Barnes*'s *per se* rule despite all the above reasons for instead considering whether the non-structural error was harmless. Rather, to paraphrase the *Cotton* Court:

> The real threat to the fairness, integrity, or public reputation of judicial proceedings would be if [Appellant], despite the overwhelming and uncontroverted evidence that [Mr. Santos suffered most serious bodily injuries], were to receive a sentence prescribed for those committing less substantial [harm] because of an error that was never objected to at trial.

*Cotton*, 535 U.S. at 634 (cleaned up).

Therefore, we hereby hold that *Barnes* is no longer good law to the extent that it proclaimed all sentences tainted by *Apprendi* violations to be *ipso facto* illegal. Henceforth, when a court is faced with an *Apprendi* violation, whether of the due process or jury trial variety, the court is to

undertake a harmless error analysis before ruling that the sentence is illegal.[15]

*King* sets the standard for the analysis where notice rights were infringed. As for Sixth Amendment *Apprendi* violations, the sentence is nonetheless legal if "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error[.]"[16] *Neder*, 527 U.S. at 17.

---

[15] It is true that "[t]he Commonwealth bears the burden of proving that the error was harmless beyond a reasonable doubt." *Commonwealth v. Holt*, 273 A.3d 514, 540 (Pa. 2022). Nonetheless, an appellate court "may *sua sponte* invoke the harmless error doctrine as it does nothing more than affirm a valid judgment of sentence on an alternative basis." *Id*. (cleaned up). If the existence of harmlessness is not readily apparent when the doctrine is invoked *sua sponte*, the reviewing court may require advocacy from the parties on the issue.

[16] The Dissent repeatedly submits that we are eschewing our Supreme Court's precedent to engage in result-oriented judicial activism. *See* Dissenting Opinion at 1, 5, 6. However, our learned colleagues have not cited a single case in which the Pennsylvania Supreme Court declined to apply harmless error to an *Apprendi* violation where, as here, the sentencing-enhancing statute was facially constitutional. Meanwhile, our detailed discussion of our High Court's precedent reveals no mandate that we vacate a sentence that is the product of a harmless *Apprendi* error. Where our Supreme Court has not spoken to the issue at hand, our role as an error-correcting court encompasses both determining whether errors have occurred and deciding whether they need correcting. *See*, *e.g.*, *Commonwealth v. Taylor*, 230 A.3d 1050, 1073 (Pa. 2020) (remanding case to the Superior Court to decide whether harmless error analysis applied to, and defeated a claim for relief from, a Fifth Amendment violation).

### B. The Failure to Submit Serious Bodily Injury to the Jury was Harmless Error in the Instant Case

Having determined that harmless error analysis applies to the **Apprendi** violation in Appellant's case, we have no hesitation in concluding that the error was harmless here.[17]  As detailed at the outset, Appellant's defense was that he was merely present during the melee and did not participate in the assault on Mr. Santos.  The evidence that Mr. Santos suffered serious bodily injury from the attack in which Appellant was found to have participated was overwhelming and uncontroverted, as neither Appellant nor any of his co-defendants disputed that the victim sustained serious bodily injury.  Moreover, the jury actually found beyond a reasonable doubt that the assault resulted in serious bodily injury in rendering its verdict on a count that merged with the attempted murder conviction because it was based upon the same criminal act.

---

[17] Appellant argues the jury-trial aspect of **Apprendi** as a basis for relief.  We note that the certified record does not contain the criminal information, so we cannot verify whether § 1102(c) was referenced therein.  It seems unlikely, as it was not included in the complaint, and the information in this case was filed in 2010, ten years before **King** held that **Apprendi** mandates its citation in charging documents.  However, it is manifest that the lack of formal notice was also harmless error in this case since, as we detailed above, the complaint referenced serious bodily injury in connection with all charges, the aggravated assault charge supplied the same impetus for Appellant to contest that element, and the lack of notice specific to the attempted murder charge had no impact upon his identify defense.

It is abundantly plain to us that, had the jury been asked whether the attempted murder resulted in serious bodily injury to Mr. Santos, it would have said yes, just as it did in connection with the aggravated assault charge. Hence, Appellant's Sixth Amendment rights were not undermined, the error was harmless, and the sentence was not illegal.

## V.    Conclusion

In sum, the United States Supreme Court, the lower federal courts, and our sister states have long recognized that the failure to submit an issue to a jury does not necessarily undermine the resulting judgment of sentence, but rather warrants relief only if the error was not harmless.  Today we join them. To the extent that our *Johnson* and *Barnes* decisions suggested that a sentence imposed in violation of *Apprendi* or its progeny can never be harmless and is *per se* illegal, those decisions are overruled.  Since the violation of Appellant's rights in this case was harmless error, his sentence is not illegal.  Therefore, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judges Stabile, Dubow, Kunselman, Nichols and King join this Opinion.

Judge Sullivan files a Dissenting Opinion in which P.J. Lazarus and Judge Lane join.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024